UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AARON SANTISTEVAN,<br><br>Defendant. | 3:19-CR-30017-RAL<br><br>REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS EVIDENCE |

After first being stopped for speeding, Aaron Santistevan – a non-Indian with a prior felony conviction – led tribal officers on a high-speed chase. Officers eventually stopped and questioned Santistevan, searched he and his car on-site, and then conducted a warrant search of the vehicle later on at a garage. He seeks to suppress (1) all evidence seized and derived from the stops and searches and (2) his statements to two officers. Because federal law does not require exclusion of the physical evidence seized from Santistevan's person and his car but forbids the use of his statements except for impeachment, the Court recommends that the suppression motion (as amended) be granted in part and denied in part.

BACKGROUND

Shortly after 9:00 p.m. on December 28, 2018, Rosebud Sioux Tribe Law Enforcement Services (RSTLES) Officer Joshua Antman stopped Santistevan driving a

beige Lincoln MKZ with Colorado license plates. Officer Antman initially gauged Santistevan's speed at 65 miles-per-hour (mph), in a 45 mph zone, but then "froze" the speed at 59 mph.

Santistevan, the sole occupant of the vehicle, claimed "there was no way" he was speeding. Officer Antman refused to argue the point and asked Santistevan for his driver's license. Santistevan appeared nervous and his right hand trembled as he gave the license to the officer. When asked, Santistevan said he was not a tribal member. Officer Antman observed a Corona bottle in the vehicle's center console and requested the bottle. Santistevan complied. The officer looked at the beer bottle and went back to his patrol truck to check on Santistevan's status.

Upon closer inspection, Officer Antman could see a plastic baggie inside the bottle that appeared to contain marijuana residue (stems, seeds, and crumbs). He called for a K-9 officer through dispatch. At some point, the dispatcher advised Officer Antman that Santistevan's driver's license was suspended. Because Santistevan was a non-tribal member and had a suspended license, Officer Antman radioed for assistance from the Todd County Sheriff's Office.

He then returned to the car and noticed Santistevan's hand was on the gear shift lever, the vehicle was in drive, and the front passenger door was locked. Officer Antman inquired whether Santistevan was going to take off. In response, Santistevan unlocked the car and Officer Antman opened the passenger side door. The officer inquired again whether Santistevan planned to take off. Santistevan answered in the

negative. "[W]hy don't you put it in park then?" Officer Antman replied, but moments later, Santistevan sped away with the car door still open.

RSTLES officers pursued Santistevan at speeds of over 100 mph in an attempt to apprehend him. One of the officers, Jim Scott, observed an unknown object strike the top of his patrol car while trailing Santistevan. Officers though were unable to locate anything of significance in the area where the reported hit occurred.

Gerald Dillon, another RSTLES officer, deployed road spikes on the highway ahead of Santistevan. The spikes succeeded in disrupting Santistevan's car and it eventually came to a stop.

When officers caught up to the car, its interior was on fire. Officer Antman grabbed some papers and a toy ball from inside the vehicle and placed them into the snow. Meanwhile, officers extinguished the fire, put Santistevan in one of their patrol cars, and held him there until a state officer could take custody of him. The field test done on the toy – for cocaine and methamphetamine – yielded a negative result. How the fire started is unknown.

Todd County Deputy Sheriff Andrew Red Bear arrived in just over an hour and arrested Santistevan on state charges. After the fire was out, Officers Antman and Dillon searched Santistevan's vehicle. In the trunk, which Officer Dillon opened with a key, he and Officer Antman found a plastic Scheels bag. Officer Dillon cut open the bag and in it were two 20-round boxes of .50 ammunition. Officer Antman seized the ammunition because Santistevan was a convicted felon and could not possess it.

Deputy Red Bear and Officer Antman also found, and seized, $16,145 in cash from Santistevan's person during a search incident to his state arrest. Santistevan made statements about the cash and chase in response to questions from both officers.

A wrecker towed Santistevan's car to a tribal law enforcement building. Six days later, Ben Estes, a RSTLS agent and drug task force member, obtained a federal warrant to search the car. During the execution of the warrant, Agent Estes and accompanying officers discovered, and seized, other evidence from inside the vehicle.

Ultimately, a federal grand jury indicted Santistevan (1) charging him with being a prohibited person in possession of ammunition and (2) seeking to forfeit the ammunition taken from his car. He moved to suppress from use at trial, on Fourth Amendment and *Miranda* grounds, (1) the evidence seized from him and the vehicle and (2) his statements to Deputy Red Bear and Officer Antman. At a hearing held to address the motion, the Court heard testimony from five witnesses and received seven exhibits into evidence.

## DISCUSSION

**A. Stop**

Santistevan first claims that his traffic stop – for speeding – was an unreasonable and pretextual seizure. He denies he was speeding and insists the stop was merely an attempt, on the part of Officer Antman, to discover or obtain evidence of an unrelated crime.

The stop of a motor vehicle is a "seizure" of its occupants that must be conducted in accordance with the Fourth Amendment.[1]  A traffic stop is legal and comports with this Amendment if it is supported by probable cause or reasonable suspicion.[2]  Probable cause for such a stop exists "[a]s long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law."[3]  This is true even if the traffic violation is a minor one and the stop is simply "a pretext for other investigation."[4]  The less onerous standard of reasonable suspicion "exists when an 'officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed.'"[5]

Santistevan's traffic stop was lawful.  Using his radar, Officer Antman first clocked Santistevan's vehicle speed to be 65 mph.  The officer then locked in the speed,

---

[1] *See Brendlin v. California*, 551 U.S. 249, 255-59 (2007).

[2] *See United States v. Gordon*, 741 F.3d 872, 876 (8th Cir. 2013).

[3] *Id.* (alteration in original) (*quoting United States v. Coney*, 456 F.3d 850, 856 (8th Cir. 2006)).

[4] *United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) (explaining that Supreme Court precedent foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officer[ ] involved" and that the "[s]ubjective intentions [of the officer] play no role in the ordinary, probable-cause Fourth Amendment analysis"); *United States v. Lopez*, 564 F.3d 1001, 1003-04 (8th Cir. 2009) (district court did not err in failing to take trooper's subjective intentions into account, with respect to the stop of defendant's car, because they were irrelevant).

[5] *Gordon*, 741 F.3d at 876 (*quoting United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)).

on his radar, at 59 mph. Both speeds were well above the 45 mph posted limit in the area Santistevan was traveling. The excessive speed – a minor traffic violation – gave Officer Antman probable cause and a basis to stop Santistevan.[6]

Santistevan nevertheless disputes he was speeding. The Court found Officer Antman, and his explanation for the stop, to be credible. The officer did not target Santistevan or know, until after the stop, that Santistevan was driving the car.[7] Instead, Officer Antman observed the vehicle traveling faster than it should and stopped it for a speeding violation.[8] But even if Officer Antman had an ulterior motive for stopping Santistevan, it did not serve to invalidate the stop because there was probable cause to believe that a crime – although a minor traffic offense – had just been committed.[9]

## B. Vehicle Search

Santistevan next claims that since he is not Indian, tribal officers had no legal authority to search his car. He also contends that officers were not justified in searching his car, incident-to-arrest, because he was no longer in or near the vehicle when they combed through it.[10] He maintains as well that the extent of the search – entering the

---

[6]*See United States v. Binion*, 570 F.3d 1034, 1038 (8th Cir. 2009); *United States v. Sallis*, 507 F.3d 646, 649-50 (8th Cir. 2007).

[7]*See* Mot. Hrg. Tr. 10, 27-28 (March 27, 2019).

[8]*See id*. at 8-10, 27-28, 40.

[9]*See Whren*, 517 U.S. at 812-13; *Binion*, 570 F.3d at 1038; *Sallis*, 507 F.3d at 649-50.

[10]*See Arizona v. Gant*, 556 U.S. 332, 343-44 (2009).

trunk and opening a closed plastic bag – was unreasonable and requires suppression of the ammunition in the bag.  And in any event, he declares, Officer Antman's observations and the beer bottle taken at the time of the original stop could not support a probable cause search of the vehicle for drugs.

1. **Detention**

The Supreme Court has consistently reaffirmed that tribal police officers have the authority to arrest an offender within Indian country and to detain him until he can be turned over to the proper authorities, even if the tribe itself lacks jurisdiction.[11]  Federal and state courts (including the Eighth Circuit and courts in this District) have likewise regularly upheld tribal police actions, including stopping, investigating, and detaining non-Indians suspected of criminal conduct.[12]

---

[11]*See Duro v. Reina*, 495 U.S. 676, 697 (1990); *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 208 (1978); *see also Strate v. A-1 Contractors*, 520 U.S. 438, 456, n. 11 (1997) (where the Supreme Court did not "question the authority of tribal police to patrol roads within a reservation, including rights-of-way made part of a state highway, and to detain and turn over to state officers non-members stopped on the highway for conduct violating state law"); *see generally American Indian Deskbook*, §4:19 & nn. 5-7 (2018 ed.)

[12]*See United States v. Terry*, 400 F.3d 575, 579-80 (8th Cir. 2005); *United States v. Becerra-Garcia*, 397 F.3d 1167, 1174-75 (9th Cir. 2005), *cert. denied*, 547 U.S. 1005 (2006); *Ortiz-Barraza v. United States*, 512 F.2d 1176, 1179-80 (9th Cir. 1975); *United States v. Peters*, 3:16-CR-30150-RAL, 2017 WL 1383676 at **2-3 (D.S.D. April 13, 2017); *United States v. Nichols*, CR 14-30038-MAM, 2014 WL 4185360 at *3 & n. 14 (D.S.D. Aug. 20, 2014); *Ouart v. Fleming*, No. CIV-08-1040-D, 2010 WL 1257827 at **5-6 (W.D. Okla. March 26, 2010); *Colyer v. State Dep't of Transp.*, 2009 WY 43, ¶25, 203 P.2d 1104, 1110-11; *State v. Haskins*, 269 Mont. 202, 211, 887 P.2d 1189, 1195 (1994); *Primeaux v. Leapley*, 502 N.W.2d 265, 270 (S.D. 1993); *State v. Schmuck*, 121 Wash.2d 373, 386-92, 850 P.2d 1332, 1338-42

(continued. . .)

RSTLES officers detained Santistevan – because he was not a tribal member (or likely an Indian at all) and was driving with a suspended driver's license – until a state officer from Todd County showed up to take custody of him.  Santistevan's detention was not lengthy or prolonged by an exploratory interview[13] and was not otherwise unreasonable under the circumstances.[14]  Nor did officers act outside their power to detain Santistevan pending Deputy Red Bear's arrival at the locale[15] or flout their responsibilities and infringe on Santistevan's Fourth Amendment rights.[16]

## 2. Automobile Exception and Probable Cause

Having determined that tribal officers had authority to seize Santistevan, the Court now turns to his threefold argument that officers acted unreasonably in searching his car.  The Court concludes that the search of the vehicle was proper under the "automobile exception" to the warrant requirement.

---

(1993); *State v. Pamerien*, 156 Or. App. 153, 156-59, 967 P.2d 503, 504-06 (1998); *but see United States v. Keys*, 390 F.Supp.2d 875, 884 (D.N.D. 2005) (finding that tribal officers' continued detention of a suspect for an investigatory interview after the suspect's non-Indian status had been confirmed was unreasonable).

[13]*See* Mot. Hrg. Tr. 77-79 (March 27, 2019) (reflecting that Santistevan was detained for about 75 minutes and only asked a few questions after Red Bear arrived).

[14]*See Terry*, 400 F.3d at 580; *see and compare with Keys*, 390 F.Supp.2d at 884; *see generally*, William C. Canby, Jr., *American Indian Law in a Nutshell*, at pp. 198, 205-06 (6th ed. 2014)

[15]*See Duro*, 495 U.S. at 697; *Terry*, 400 F.3d at 579.

[16]*See Terry*, 400 F.3d at 580.

Probable cause to believe that a vehicle contains contraband or evidence of criminal activity has long been held to justify a warrantless search of the vehicle and seizure of contraband in it.[17] Of course, "[p]robable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'"[18] And probable cause for the search of the vehicle may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely on the information within the knowledge of the officer(s) on the scene if there is some degree of communication.[19] If probable cause exists to support a vehicle search, then the search may encompass every part of the vehicle and its contents that may conceal the object of the search.[20] This includes the passenger compartment of the vehicle, its trunk and all containers, packages and compartments in

---

[17]See *Gant*, 556 U.S. at 347; *California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Ross*, 456 U.S. 798, 806-09 (1982); *see also United States v. Shackleford*, 830 F.3d 751, 753, n. 2 (8th Cir. 2016) (recognizing that the automobile exception is distinct from the search-incident-to-lawful arrest exception at issue in *Gant* and "requires probable cause to believe contraband or evidence of *any* crime will be found in the vehicle, not merely reason to believe evidence of the crime of arrest will be found").

[18]*United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir.), (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)), *cert. denied*, 551 U.S. 1123 (2007).

[19]*See United States v. Rowe*, 878 F.3d 623, 628 (8th Cir. 2017), *cert. denied*, 138 S.Ct. 1602 (2018); *Shackelford*, 830 F.3d at 753-54.

[20]*See Wyoming v. Houghton*, 526 U.S. 295, 302 (1999); *Ross*, 456 U.S. at 825; *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003), *cert. denied*, 541 U.S. 1081 (2004).

the vehicle.[21]  As long as officers have probable cause to search a vehicle for contraband, they may conduct the search at the scene or later on if the vehicle is impounded.[22]

Tribal police here had probable cause to search Santistevan's vehicle, including the Scheels bag found in the car's trunk.  Officer Antman observed what appeared to be marijuana residue in a beer bottle situated next to Santistevan.  The presence of marijuana and drug paraphernalia reasonably suggested ongoing marijuana possession or consumption,[23] a violation of federal, state and tribal law.[24]  Notably, Santistevan's car bore license plates from the State of Colorado, a known place for recreational use and distribution of marijuana.[25]

---

[21]*See United States v. Blaylock*, 535 F.3d 922, 926 (8th Cir. 2008), *cert. denied*, 558 U.S. 830 (2009); *United States v. Caves*, 890 F.2d 87, 90 (8th Cir. 1989).

[22]*See California v. Carney*, 471 U.S. 386, 395 (1985); *United States v. Johns*, 469 U.S. 478, 483-88 (1985); *see also Michigan v. Thomas*, 458 U.S. 259, 261-62 (1982) (*per curiam*) (emphasizing "the justification to conduct [ ] a warrantless search does not vanish once the car has been immobilized," and that a vehicle lawfully in police custody may be searched on the basis of probable cause to believe it contains contraband without the necessity of any showing of exigent circumstances); *Texas v. White*, 423 U.S. 67, 68 (1975) (*per curiam*) (there is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure).

[23]*See United States v. Thurmond*, 782 F.3d 1042, 1044-45 (8th Cir. 2015); *United States v. Allebach*, 526 F.3d 385, 387 (8th Cir. 2008); *United States v. Briscoe*, 317 F.3d 906, 907-08 (8th Cir. 2003); *see also United States v. Englehart*, 811 F.3d 1034, 1042 (8th Cir. 2016) (defendant's admission of having a "little bit" of marijuana in his vehicle gave officer probable cause to search the vehicle for drugs).

[24]*See* 21 U.S.C. §§802(16), 844(a); SDCL §§22-42-1(7), 22-42-6; Law and Order Code of Rosebud Sioux Tribe §§5-28-1(7), 5-29-1.

[25]*See United States v. Scarborough*, 128 F.3d 1373, 1378 (10th Cir. 1997) (Colorado a
(continued. . .)

Santistevan's own actions and conduct bolstered the probability that there was contraband in his vehicle. He seemed nervous and quivered as he handed his driver's license to Officer Antman. Santistevan argued about whether he was speeding and locked his car door after at first talking to the officer. Santistevan also kept his hand on the gear shifter and denied he planned to take off when asked. He then peeled away, taking law enforcement on a lengthy nighttime chase, at speeds beyond 100 mph, with snow on the ground. While in flight, he threw an object from his car and started a fire in the vehicle. The fire charred papers and damaged other items (potential evidence) in the vehicle. Altogether, this behavior enhanced an already strong inference that Santistevan's car had drugs and other contraband in it, which he did not want officers to uncover.[26]

---

"narcotics source state"); *United States v. Trejo*, 135 F.Supp.3d 1023, 1027 (D.S.D. 2015) (citing trooper's testimony that "Colorado is a 'source' state for drugs").

[26]*See District of Columbia v. Wesby*, 138 S.Ct. 577, 587-88 (2018); *United States v. Mayo*, 627 F.3d 709, 713-14 (8th Cir. 2010); *United States v. Martinez-Cortes*, 566 F.3d 767, 771 (8th Cir. 2009); *United States v. Slipka*, 735 F.2d 1064, 1065-66 (8th Cir. 1984); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (nervous, evasive behavior is a pertinent factor in determining reasonable suspicion); *United States v. Parish*, 606 F.3d 480, 484, 486-87 (8th Cir.) (probable cause when informant said the person in a described model car would arrive at a certain time and place, and where police then approached that car and suspect attempted to flee), *cert. denied*, 562 U.S. 1034 (2010); *United States v. Jones*, 535 F.3d 886, 891 (8th Cir. 2008) (suspect's evasive action, after seeing police, is a fact that supports probable cause); *see generally* 2 Wayne R. LaFave, *Search and Seizure*, §§3.6(d) - (f) (5th ed. 2012 & Oct. 2017 update) (furtive gestures, flight, and response to questioning).

At any rate, given the collective knowledge of the investigative officers, the search of Santistevan's vehicle was lawful.[27] These officers received intel from others in their ranks and from neighboring state officers that Santistevan had (1) a felony drug conviction; (2) eluded Nebraska officers while driving a truck with a strong odor of marijuana in it; (3) drug charges against him in that state; and (4) been involved in the drug trade and carried a firearm on his person or under the seat of his vehicle.[28] Responding officers were also informed that just three days earlier, Santistevan's car was "located at a known drug house that deals cocaine and methamphetamines."[29] This intel, coupled with the other information officers had that night, gave them the probable cause they needed to conduct a warrantless search of the car.[30]

Opening the trunk and plastic bag in it and confiscating the ammunition from the bag were permissible searches and seizures. They squarely fell within the automobile exception and the Fourth Amendment's reasonableness requirement.[31]

---

[27]*See Terry*, 400 F.3d at 581.

[28]*See* Mot. Hrg. Tr. 23-28, 42-43, 46, 66-67, 71; Mot. Hrg. Ex. B (March 27, 2019).

[29]Mot. Hrg. Ex. B; *see also* Mot. Hrg. Tr. 26-27, 66-67.

[30]*See United States v. Edwards*, 891 F.3d 708, 711-12 (8th Cir.), *cert. denied*, 139 S.Ct. 349 (2018); *Rowe*, 878 F.3d at 628-29; *Shackleford*, 830 F.3d at 753-54; *United States v. Robinson*, 664 F.3d 701, 703-04 (8th Cir. 2011); *United States v. Banks*, 514 F.3d 769, 776 (8th Cir.), *cert. denied*, 553 U.S. 1100 (2008); *Wells*, 347 F.3d 287-88.

[31]*See Acevedo*, 500 U.S. at 573-76l; *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir.), *cert. denied*, 138 S.Ct. 245 (2017); *Terry*, 400 F.3d at 581; *United States v. Fladten*, 230 F.3d 1083, 1085-86 (8th Cir. 2000); *United States v. Payne*, 119 F.3d 637, 642-43 (8th

(continued. . .)

**C. Statements**

At the evidentiary hearing, Santistevan orally amended his suppression motion to include a *Miranda* claim. He says Deputy Red Bear and Officer Antman subjected him to custodial interrogation without any *Miranda* advisement. As a consequence, he asserts, his statements are inadmissible for all purposes.[32]

While Santistevan was in custody at the scene, Deputy Red Bear and Officer Antman asked him why he ran and had a large amount of money on him.[33] Santistevan's statements, in response to these questions, are what he wants excluded. The questions were – from an objective standpoint – designed to prompt, and lead, Santistevan to make self-incriminating statements. His statements were the product of interrogation – as that term has been defined and applied – and obtained in violation of *Miranda*.[34] They must, therefore, be suppressed as substantive evidence[35] – a point the Government concedes.[36]

---

Cir.), *cert. denied*, 522 U.S. 987 (1997); *see also United States v. Farnell*, 701 F.3d 256, 260, 264 (8th Cir. 2012) (search within "closed green bag" proper in search of vehicle for evidence of bank robbery).

[32]*See* Mot. Hrg. Tr. 78-80, 82-83.

[33]*See* Mot. Hrg. Tr. 77-78.

[34]*See Rhode Island v. Innis*, 446 U.S. 291, 300-02 (1980); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990); *United States v. Longbehn*, 850 F.2d 450, 452-53 (8th Cir. 1988); *see also United States v. Spencer*, No. 18-cr-114 (WMN/HB), 2018 WL 7572495 at *4 (D. Minn. Nov. 30, 2018) (statements, elicited by officer as to why defendant was running, constituted interrogation and implicated *Miranda*), *R&R adopted*, 2019 WL 522163 (D. Minn. Feb. 11, 2019); *see generally* 2 Wayne

(continued. . .)

Even so, Santistevan's statements are admissible as impeachment evidence if he elects to testify in his own defense at trial.[37] They were ones he wanted to make and were not the offspring of questioning that was so coercive it overbore his will and shoehorned his decision making capacity.[38]

That Santistevan was in custody does not mean he could not make voluntary statements.[39] He certainly had the efficacy to speak for himself, and did so – of his own volition – despite the *Miranda* transgression.[40]

---

R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure* §6.7(a)-(c) (4th ed. 2015 & Nov. 2017 update) (interrogation, questioning and other "words or actions").

[35] *See Stansbury v. California*, 511 U.S. 318, 322 (1994); *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984).

[36] *See* Mot. Hrg. Tr. 80-81, 83-84.

[37] *See Oregon v. Elstad*, 470 U.S. 298, 306-08 (1985); *Oregon v. Hass*, 420 U.S. 714, 722-23 (1975); *Harris v. New York*, 401 U.S. 222, 224-26 (1971).

[38] *See* Mot. Hrg. Tr. 81-82; *see also Hass*, 420 U.S. at 722-23 (holding that a suspect's statements were voluntary and admissible for impeachment purposes where "the pressure on him was no greater than that on any person in like custody or under inquiry by any investigating officer"); *United States v. Garreau*, 735 F.Supp.2d 1155, 1168 (D.S.D. 2010) (arrestee's statements voluntary and not the offspring of coercive action that undermined his free will), *aff'd*, 658 F.3d 854 (8th Cir. 2011).

[39] *See Innis*, 446 U.S. at 299-300; *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-27 (1973); *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005); *United States v. Lockett*, 393 F.3d 834, 838 (8th Cir. 2005), *cert. denied*, 546 U.S. 1198 (2006); *United States v. Hatten*, 68 F.3d 257, 262 (8th Cir. 1995), *cert. denied*, 516 U.S. 1150 (1996).

[40] *See* Mot. Hrg. Tr. 82.

**D. Tainted Fruit**

Any evidence derived from the December 28 search and seizure of Santistevan's vehicle – and the items taken from it – does not require suppression under the exclusionary rule. Because officers did not sidestep the Fourth Amendment, there is no "poisonous tree" for any "tainted fruit" to grow or fall from.[41] This being the case, the Government may use at trial the evidence officers acquired and developed from the on-site searches and seizures – including the ammunition, currency, and bodily fluids drawn and tested[42] – and any property collected during the January 5, 2019 warrant search of the vehicle.[43]

## CONCLUSION

Officer Antman had probable cause to stop Santistevan for speeding. That rendered the stop reasonable under the Fourth Amendment – even if the officer had some additional law enforcement objective in mind.

---

[41]*See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

[42]*See* Mot. Hrg. Tr. 45.

[43]*See United States v. Medearis*, 236 F.Supp.2d 977, 984 (D.S.D. 2002) (explaining that under the rule in *Wong Sun*, evidence is not excluded unless knowledge of it is obtained as a result of some prior illegality and exploitation of the illegality or obtained by means sufficiently distinguishable from the illegality to "purge" the evidence of any taint); *see generally* 6 *Search and Seizure*, §11.4(f) (search as fruit of prior illegal search).

Tribal officers' detention of Santistevan, a non-Indian, was likewise reasonable. They contacted state authorities right away after apprehending Santistevan and surrendered custody of him when Deputy Red Bear arrived.

The automobile exception permitted officers to search Santistevan's car because they had probable cause to believe the vehicle had contraband in it. They were within their authority to search the entire passenger compartment of the vehicle as well as the closed plastic bag in the trunk because the object of their search – drug and gun related contraband – could easily be in any of these places.

Santistevan's statements to Deputy Red Bear and Officer Antman are excludable as substantive trial evidence. But they may be offered to impeach Santistevan if he testifies.

The incident-to-arrest and warrant based evidence – whether directly or derivatively obtained – was not the contaminated fruit of an earlier grown toxicant (the initial stop and searches). This evidence too is freely admissible and may be used against Santistevan at trial.

## RECOMMENDATION

Accordingly, based on the authorities and legal analysis set forth in this report, and the record now before the Court, it is hereby

RECOMMENDED that Santistevan's written Motion to Suppress Evidence[44] be denied. It is further

RECOMMENDED that Santistevan's oral motion to suppress statements[45] be granted in part and denied in part. The motion should be granted to the extent that it seeks to exclude, as substantive – but not impeachment – evidence, the statements he made to Deputy Red Bear and Officer Antman in response to their questions. In all other respects, the motion should be denied.

## NOTICE

The parties consented to shorten the time for the filing of objections to this report and recommendation from 14 calendar days[46] to 7. Any objections, therefore, shall be filed by April 22, 2019. Unless an extension of time for cause is later obtained,[47] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[48] Objections must "identify[] those issues on which further review is desired[.]"[49]

---

[44] *See* Dkt. No. 19.

[45] *See* Mot. Hrg. Tr. 78-80.

[46] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[47] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[48] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[49] *Arn*, 474 U.S. at 155.

DATED this 15th day of April, 2019, at Pierre, South Dakota.

                                                BY THE COURT:

                                                */s/ Mark A. Moreno*

                                                **MARK A. MORENO**
                                                **UNITED STATES MAGISTRATE JUDGE**