UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AARON SANTISTEVAN,<br><br>Defendant. | 3:19-CR-30017-RAL<br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING IN PART AND DENYING IN PART MOTION TO SUPPRESS |

The Government charged Aaron Santistevan (Santistevan) with possession of ammunition by a prohibited person. Doc. 1. Santistevan moved to suppress from use at trial the evidence seized from him and the vehicle he was driving on December 28, 2018, on the basis that the officers violated his rights under the Fourth Amendment. Doc. 19. Magistrate Judge Mark A. Moreno held a suppression hearing on March 27, 2019, during which he received seven exhibits and heard testimony from five law enforcement officers: Rosebud Sioux Tribe Law Enforcement Officer Joshua Antman (Officer Antman); Rosebud Sioux Tribe Law Enforcement Officer Jim Scott; Rosebud Sioux Tribe Law Enforcement Officer Gerald Dillon; Todd County Deputy Sheriff Andrew Red Bear (Deputy Red Bear); and Rosebud Sioux Tribe Law Enforcement Officer Ben Estes. Docs. 26, 28.

During the hearing, Santistevan orally amended his suppression motion to include all statements made by him to any law enforcement officer after he was placed under arrest, asserting that the officers had subjected him to a custodial interrogation in violation of the precepts of Miranda v. Arizona, 384 U.S. 436 (1966), and the Fifth Amendment. Doc. 28 at 78–79. On April

1

15, 2019, Judge Moreno issued a Report and Recommendation recommending Santistevan's motion be granted in part and denied in part. Doc. 32. Santistevan has now objected to that Report and Recommendation. Doc. 34.

This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Having conducted a de novo review, this Court adopts the Report and Recommendation as supplemented by this opinion.

I. Discussion

A. Initial Traffic Stop

Santistevan argues that he did not violate any traffic laws, that the officers' conclusion that he did so was unreasonable, and that the totality of the circumstances show that the officers lacked reasonable suspicion. Doc. 34 at 2. A traffic stop is a "seizure" under the Fourth Amendment "and must be supported by probable cause or reasonable suspicion." United States v. Gordon, 741 F.3d 872, 876 (8th Cir. 2013).[1] A traffic stop is supported by probable cause "[a]s long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law." Id. (alteration in original) (citation omitted). This is true even when the traffic violation is minor and the stop is simply "a pretext for other investigation." United States v. Payne, 534 F.3d 948, 951 (8th Cir. 2008); see also Whren v. United States, 517 U.S. 806, 813 (1996) (explaining that Supreme Court precedent "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"). The less-

---

[1] "Although the fourth amendment does not apply to the conduct of Indian tribal officials in Indian territory, the same standards are applicable to their actions under the Indian Civil Rights Act of 1968." United States v. Schimdt, 403 F.3d 1009, 1013 (8th Cir. 2005).

2

rigorous standard of reasonable suspicion "exists when an officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Mosley, 878 F.3d 246, 251 (8th Cir. 2017) (citation omitted). The Fourth Amendment requires that police officers be reasonable, not perfect. Heien v. North Carolina, 135 S. Ct. 530, 536 (2014). Thus, grounds for a traffic stop may rest on an officer's mistake of fact or law, provided that the mistake is objectively reasonable. Id. at 536–39; United States v. Gaffney, 789 F.3d 866, 868 (8th Cir. 2015).

Here, Officer Antman conducted a traffic stop after he observed Santistevan driving over the posted speed limit. Judge Moreno considered Officer Antman's testimony, that he observed Santistevan's vehicle traveling at the speed of 65 miles per hour, that he locked in the speed on his radar at 59 miles per hour, and that the posted speed limit was 45 miles per hour. Judge Moreno properly concluded that even if Officer Antman had some ulterior motive for the traffic stop, the stop was still valid. See Payne, 534 F.3d at 951. Judge Moreno fully and appropriately addressed this issue in his Report and Recommendation.

**B.   Vehicle Search**

Santistevan makes several objections to Judge Moreno's Report and Recommendation that the tribal officers had probable cause to search the vehicle and its contents. Doc. 34 at 2. First, according to Santistevan, his status as a non-Indian made his detention unreasonable, and subsequently his vehicle's detention unreasonable in violation of the Fourth Amendment. Doc. 34 at 2. Although tribes generally do not have criminal jurisdiction over non-Indians, Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 195, 212 (1978), tribal police have the authority to detain non-Indians who commit crimes within Indian country until they can be turned over to the appropriate state or federal authorities, Duro v. Reina, 495 U.S. 676, 697 (1990) ("Tribal law

3

enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, to eject them. Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities."); United States v. Terry, 400 F.3d 575, 579 (8th Cir. 2005) (explaining that tribal officers have the authority "to detain non-Indians whose conduct disturbs the public order on their reservation"). Nevertheless, a tribal officer's detention of a non-Indian must still be reasonable under Fourth Amendment standards. 25 U.S.C. § 1302(2); Terry, 400 F.3d at 580.

The tribal officers' detention of Santistevan was reasonable under the Fourth Amendment. Officers conducted a traffic stop for speeding and discovered Santistevan was driving with a suspended driver's license. When Officer Antman learned that Santistevan was a non-Indian, he contacted the Todd County Sheriff's Office immediately. Doc. 26 at 14–15. Before Officer Antman was able to secure Santistevan, Santistevan led officers on a high-speed chase. After officers were able to use road spikes to stop the vehicle, Santistevan was placed in a patrol car until Deputy Red Bear arrived and arrested Santistevan on state charges. The tribal officers' detention of Santistevan lasted approximately seventy-five minutes. See Doc. 28 at 77, 101–02. This was not an unreasonable amount of time under the circumstances. See Terry, 400 F.3d at 580 (holding that it was not unreasonable for tribal officers to detain a non-Indian defendant overnight when the state sheriff was eighty miles away on a rainy night and did not have any deputies available). Judge Moreno properly concluded that the tribal law enforcement detention of Santistevan did not violate the Fourth Amendment.

Second, Santistevan argues that he "could not be prosecuted in tribal court for evidence found in the car, therefore, [the tribal officers] conducting a search of the car at the scene was constitutionally unreasonable" in violation of the Fourth Amendment. Doc. 35 at 6. "The Supreme

Court has recognized that tribal law enforcement authorities possess 'traditional and undisputed power to exclude persons whom they deem to be undesirable from tribal lands,' and therefore have 'the power to restrain those who disturb public order on the reservation, and if necessary to eject them.'" Terry, 400 F.3d at 579 (quoting Duro, 495 U.S. at 696–97). Because such power "would be meaningless if tribal police were not empowered to investigate such violations, tribal police must have such power." Id. at 579–80. Therefore, in this case, the tribal officers did not violate the Fourth Amendment merely because of Santistevan's non-Indian status because tribal officers had the authority to investigate crime to determine whether to eject him from the reservation.

When tribal officers conduct a search of a non-Indian vehicle, they are subject to the same Fourth Amendment constraints as state and federal officers. See id. at 580. Under the Fourth Amendment, a person's privacy interest in a vehicle's interior is not absolute. A motorist does not have a reasonable expectation of privacy in areas within his vehicle that are visible from the outside. Texas v. Brown, 460 U.S. 730, 740 (1983) (plurality opinion) ("There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.") (internal citations omitted); New York v. Class, 475 U.S. 106, 118 (1986) (explaining that locations inside a vehicle that are in plain view of people outside the vehicle are not "subject to a reasonable expectation of privacy"); United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (explaining that a suspect with transparent windows did not have a reasonable expectation of privacy in the "visible interior of his car"). Thus, when a vehicle is lawfully stopped, an officer who merely looks through a vehicle's window from the outside has not searched the vehicle within the meaning of the Fourth Amendment. Brown, 460 U.S. at 740; United States v. Martin, 806 F.2d 204, 206–07 (8th Cir.

5

1986) (holding that agent's viewing of gun parts while looking through the window of a car did not constitute a search).

Here, Officer Antman properly conducted a traffic stop. While speaking with Santistevan through the driver's side window on December 28, 2018, Santistevan appeared nervous and Officer Antman saw—making an observation that does not implicate Fourth Amendment privacy interests—a beer bottle next to Santistevan. Officer Antman requested that Santistevan hand him the beer bottle, and Santistevan complied. Once Officer Antman had the bottle in his possession, Officer Antman observed marijuana residue in the beer bottle. Officer Antman saw that the vehicle had Colorado license plates, a place known for recreational use and distribution of marijuana. Santistevan subsequently led officers on a high-speed chase, only to stop after running over spike strips with a fire burning in the back seat of his vehicle. This Court need not decide whether the narrower search-incident-to-arrest exception applies to the subsequent search of the vehicle because the evidence was sufficient to establish probable cause for Officer Antman to search the vehicle for evidence of marijuana consumption under the "automobile exception" to the warrant requirement. See United States v. Shackleford, 830 F.3d 751, 753 n.2 (8th Cir. 2016) (holding that "[t]he automobile exception requires probable cause to believe contraband or evidence of *any* crime will be found in the vehicle, not merely reason to believe evidence of the crime of arrest will be found"); United States v. Mayo, 627 F.3d 709, 714 (8th Cir. 2010) (considering the defendant's nervous behavior as a factor when determining whether the automobile exception applied); United States v. Briscoe, 317 F.3d 906, 908–09 (8th Cir. 2003) (holding that the officers' discovery of marijuana seeds and stems in the garbage outside a residence was sufficient to establish probable cause to search the residence for marijuana). Judge Moreno properly concluded that a search that "includes the passenger compartment of the vehicle, its trunk and all containers, packages and

compartments in the vehicle" was proper under the automobile exception to the warrant requirement. Doc. 32 at 9–10.

Next, Santistevan objects to two of Judge Moreno's factual findings and his conclusion that "given the collective knowledge of the investigative officers, the search of Santistevan's vehicle was lawful." This Court need not address this issue as it finds the search constitutional regardless of whether an officer saw Santistevan actually throw an object from the vehicle during the high-speed chase or the object merely came from the vehicle, whether Officer Antman actually knew of Santistevan's alleged other drug charges or not, and what "collective knowledge" officers had about Santistevan's whereabouts before the stop or Santistevan's alleged history in the drug trade or with firearms. The officers had probable cause to search the vehicle based on Officer Antman's observations during the traffic stop even before the high-speed chase, Santistevan's flight, and the fire in the backseat of the vehicle that appeared to be set to destroy evidence.

Santistevan argues that "all evidence obtained following the issuance of the search warrant must be suppressed as the illegal fruit of the unreasonable stop and search of the car on December 28, 2018." Doc. 34 at 4. Because this Court finds that the stop and search were reasonable and constitutional, there is no illegal fruit to suppress.

C. **Voluntary Statements**

Lastly, Santistevan objects to Judge Moreno's conclusion that his statements were voluntarily made. Doc. 34 at 4. "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc) (quoting Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001)); see also Schneckloth v. Bustamonte, 412 U.S. 218, 226–27 (1973). In determining whether a statement

was involuntary, both the conduct of the police and the personal characteristics of the defendant must be considered. See Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004) ("We consider, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition.").

Judge Moreno concluded that Santistevan made his statements voluntary based on the totality of the circumstances. See Bustamonte, 412 U.S. at 227 (holding that statements are involuntary if they are "the product of duress or coercion, express or implied, [and is a question] to be determined from the totality of all the circumstances."). He reasoned that simply because there is a Miranda violation does not make the statements involuntary. This Court agrees with Judge Moreno's conclusion that Santistevan's statements were voluntary. Santistevan's one-sentence argument—"[t]he defense objects to the findings and recommendations that the statements were voluntary and therefore admissible for impeachment purposes if Defendant testifies"—does not require any additional discussion beyond what Judge Moreno has done. Doc. 34 at 4. For the reasons stated in the Report and Recommendation, this Court finds that Santistevan's statements were voluntary.

## II. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Defendant's Objections to the Report and Recommendation, Doc. 34, are overruled. It is further

ORDERED that the Report and Recommendation for Disposition of Motion to Suppress, Doc. 32, is adopted. It is further

ORDERED that Santistevan's Motion to Suppress, Doc. 19, is denied. It is further

ORDERED that Santistevan's oral motion to suppress is granted in part and denied in part.

8

DATED this 29th day of April, 2019.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE